## HANNAH E. WATSON *et al.*

*v.*

## JOHN B. SHERMAN *et al.*

1. TRUSTEE'S SALE—*party participating in, not allowed to urge inade-quacy of price.* Where the owner of land sold under a power in a mortgage, attends the sale, and, through his attorney, bids upon the same, and allows it to be sold to another, he will not be permitted, years after, and when valuable improvements have been made on it by subsequent purchasers, to impeach the sale on the ground that the property was sold for less than its true value.

2. SAME—*right of trustee to purchase property after the sale.* While public policy and fair dealing will not allow a trustee, either directly or indirectly, to become a purchaser of property at his own sale, yet, after the sale is made, and the property has passed beyond his control, he will have the same right to purchase it as a stranger, if the transaction is in good faith.

3. POWER OF ATTORNEY—*sufficiency of, to sell and convey land.* A power of attorney to sell and convey, under which a conveyance of land is made, must be in writing, and of equal dignity with the deed executed, in order to be valid at law. It must be under seal.

4. A power of attorney not under seal, will be sufficient to authorize the attorney to sell land, but not to make a conveyance.

5. SAME—*when an equitable title passes, under an unsealed power.* Where a trust deed authorizes the trustee, his legal representatives or attorney, to sell the land conveyed on default of payment, and a sale is fairly made under a power of attorney not under seal, and the purchase money paid and a conveyance executed by the attorney, the sale will be good in equity, and the purchaser will acquire the equitable title to the premises, and may set up such title in bar of a suit in equity to have the sale set aside.

. 6. TRUST DEED—*construed, as to notice of sale required.* Where a trust deed, or mortgage with a power of sale, provides that the mortgagee may sell after having advertised such sale sixty days in a newspaper published in, etc., by posting up notices in four places in the county, the word " by " will be regarded as inserted by mistake, in place of the word " or," and it will be sufficient if notice is given by publication or by posting.

WRIT OF ERROR to the Circuit Court of Kendall county; the Hon. SILVANUS WILCOX, Judge, presiding.

This was a bill in chancery, by Hannah E. Watson and Lille Belle Lutyens, against John B. Sherman, John Johnson, John Nelson, Oliver H. Lee and Bennett B. Chambers, to set aside a sale of land made under a power in a mortgage and subsequent deeds. The material facts of the case are stated in the opinion of the court.

Mr. CHARLES WHEATON, for the plaintiffs in error.

Mr. B. F. PARKS, and Mr. EDWIN N. LEWIS, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 2d day of August, 1859, Wm. F. Lutyens and Hannah, his wife, executed to John B. Sherman a mortgage on 80 acres of land and other real estate in Kendall county, to secure the payment of $500. The mortgage contained a power of sale, authorizing Sherman, his legal representatives or attorney, in default of payment of the note, upon giving certain notice, to sell the premises at public vendue, for cash.

On the 3d day of July, 1863, after the mortgage debt was due, Sherman executed a power of attorney, authorizing Bennett B. Chambers, as his attorney, to make sale of the premises, and upon making sale, to convey the same to the purchaser. This instrument of writing was in all respects formal, except that it was not under seal.

On the 7th day of July, 1863, Chambers, acting under the power of attorney, sold the eighty acres of land at public vendue, and the same was struck off and sold to one Geo. W.

Hartwell, for the sum of $620, he being the highest bidder. On the same day, Hartwell sold and transferred, by an instrument in writing, his bid in and to the premises, to ·Oliver H. Lee, and authorized Sherman or his attorney to execute a deed to him.   On the same date, Sherman, by and through his attorney, executed a deed, conveying the premises to Lee.   This deed recites the mortgage power of sale therein, notice in pursuance thereof and sale of the premises.

On the 10th day of July, 1863, Lee and his wife sold and conveyed the premises to Sherman, who, on the 14th day of October, 1863, sold and conveyed to John Johnson, who purchased for himself and John Nelson.   They subsequently divided the land.   Johnson conveyed one-half thereof to Nelson.

These parties, soon after the purchase, went into possession and improved, and have occupied the premises ever since.

Lutyens, the mortgagor, died in December, 1861.   His heirs, except Lille Belle Lutyens, conveyed their interest in the premises to the widow, Hannah E. Watson, and she and Lille Belle Lutyens brought this bill for the purpose of setting aside the sale made by Sherman under the mortgage, and all subsequent deeds, and for an account of the rents arising from the premises since they have been occupied by Nelson and Johnson. The complainants in the bill contend that the sale under the mortgage was fraudulent, and if not fraudulent, the power of attorney from Sherman to Chambers not being under seal, the deed made by him under the power did not pass the title.

It is clear, from the evidence, that the sale under the mortgage was fairly conducted; that every opportunity was afforded to secure competition in bidding; that the sale was well attended, the bidding spirited, and the amount for which the land sold was as near its true value as could have been expected in any case where lands are sold to the highest bidder for cash.   Even the complainant was represented at the sale by her attorney, Mr. Parks, who attended with money necessary to purchase the land in case it did not sell for as much as, in his judgment and that of his client, it was reasonably worth.   He

was one of the bidders at the sale, and he says: " It brought all I thought it was worth, and I was glad I did not get it."

The complainant, after having attended the sale and participated in bidding, and who voluntarily allowed the land to be sold at the price it was, is in no position, years after the sale occurred, to complain that the land was sacrificed, or sold for less than its true value.

There is no foundation for the assertion that the sale was fraudulent in fact; nor are we able, from the facts in this case, to arrive at the conclusion that the sale was fraudulent in law. Sherman was not the purchaser at his own sale, as has been argued by complainant's solicitor. Hartwell, who bid off the land at the sale, so far as the evidence shows, was a *bona fide* bidder, on his own account. Lee, it is true the evidence shows, was, at some time, a law partner of Sherman; but that there was any understanding or arrangement between him and Sherman through which he purchased Hartwell's bid and obtained a deed, the evidence fails to disclose. The record contains no substantial evidence upon which to base the allegation of fraud in the transaction, except the bare, naked fact that Hartwell, the purchaser at the sale, sold to Lee, and that he subsequently sold and conveyed to Sherman. If it be true that a trustee who makes sale of real estate under a trust deed is forever thereafter prohibited, owing to the relation he has occupied, from dealing in the trust property, then this transaction may be regarded as fraudulent in law; otherwise, not. While public policy and fair dealing will not allow a trustee to, either directly or indirectly, become the purchaser of property at a sale which he has made, yet we do not understand that the doctrine has been so far extended in any court as to prohibit the trustee, for all time to come, from, in good faith, dealing in the property.

Sherman, who was mortgagee with power of sale in himself, could not buy at his own sale; in other words, he could not, at the same time, be vendor and vendee, but after the property had been fairly sold and passed beyond his control, he had the

same right to purchase it as a stranger. *Munn* v. *Burges*, 70 Ill. 604.

This brings us to the consideration of the other question— the validity of the acts of Chambers under the power of attorney without a seal. It is true, a deed, in order to pass the legal title to property intended to be conveyed, must be under seal; and, as was held in *Johnson* v. *Dodge*, 17 Ill. 433, a power of attorney, under which a conveyance is made, must be in writing, and of equal dignity with the deed executed, in order to be valid at law. But a power or authority to sell lands need not necessarily be under seal; and prior to our present statute, it was held that parol authority might be sufficient. There is a clear and marked distinction between a power to sell lands, and a power to convey; the former may exist where the latter does not. *Johnson* v. *Dodge, supra; Peabody* v. *Hoard*, 46 Ill. 242.

The power of attorney given by Sherman to Chambers was ample to authorize him to make sale of the lands, and had the seal accompanied the power, upon making sale he would have been fully authorized to execute a conveyance which would have passed the legal title. But the seal was omitted, and the inquiry is, how the transaction was affected by that omission. The land was legally sold by Chambers and purchased by Hartwell, the highest bidder at the sale. Hartwell transferred his interest in the premises to Lee, under whom the defendants claim through a regular chain of deeds. Conceding that the deed which Lee obtained was insufficient at law to pass the legal title, owing to the fact that the power of attorney under which it was executed was not under seal, yet, as the power to sell was valid, the purchaser at the sale, upon payment of the purchase money, became invested with the equitable title to the premises. This equitable title of Lee was conveyed by a regular chain of deeds to the defendants, who, in 1863, went into the possession of the premises under that title, and have held the possession ever since, making valuable improvements thereon.

268        WATSON *et al.* *v.* SHERMAN *et al.*        [Sept. T.

Opinion of the Court.

The defendants, then, occupy this position: They are in possession of land purchased and paid for in good faith under an equitable title, which they interpose as a defense, in a court of chancery, to the claim relied upon by the complainants in the bill.

We are aware of no authority, and none has been cited, which would deprive the defendants of the right to set up and use their equitable title as a defense to the title of complainants, under which they seek to obtain the property. Perhaps the rule might be different if the controversy in regard to the land was in a court of law, where the defendants would be required to rely solely upon a legal title; but in a court of chancery, where the equities of the parties are to be regarded, we entertain no doubt that the defendants have established an equitable title to the premises, which is sufficient to defeat the equities relied upon by the complainants.

It is also urged, that notices of the sale were not posted in the county as required by the terms of the mortgage. The mortgage provides, that the mortgagee, after having advertised such sale sixty days in a newspaper published in Oswego, Kendall county, Illinois, by posting up written or printed notices in four places in the county where the premises are situated, may sell, etc. The sale was advertised by publication in the paper indicated, for more than sixty days, but there is no proof that notices were printed. The language used must receive a reasonable construction. If the word " or " had been used, then notices either by publication or posting would have been sufficient. If, on the other hand, the word "and" had been used, then, evidently, both means should have been resorted to. But we do not think the language employed required notices to be posted. The parties evidently contemplated that notice of sale should be published. The words, " by posting, etc.," if given a literal interpretation, will destroy the sense and meaning of the first part of the sentence. We are inclined to the opinion that the word " by " was evidently a mistake, and was used for the word " or." Indeed, in a bill filed by one of the complainants, in 1863, in regard

to this property, she attached a copy of the mortgage to her sworn bill of complaint, in which the mode of advertising is in the alternative. It provides for sixty days' publication, " or " the posting of written or printed notices.

This construction was placed upon the mortgage by complainant in her former bill, and we think a fair and reasonable construction of the language used shows she was then correct.

Other questions have been discussed, but in the view we take of the case, their consideration is not deemed necessary.

After a careful consideration of the whole record, we concur with the circuit court in the decree dismissing the bill.

The decree will be affirmed.

*Decree affirmed.*

Mr. JUSTICE BREESE: I am unable to concur in this opinion. I can not resist the conclusion that the purchase of this land was, in fact, a purchase by the trustee, and therefore void. Nor do I think the notice of the sale required by the terms of the mortgage, was given.