VARET, administrator, &c. and others *vs.* THE NEW-YORK INSURANCE COMPANY.

Where the defendants had underwritten a policy for $15,000 upon a cargo of coffee, which cargo was afterwards seized under the Berlin and Milan decrees and condemned; and the assured after such seizure offered to abandon to the underwriters as for a total loss, which abandonment they refused to accept; and a compromise was afterwards made between the parties by which the assured consented to receive the sum of $5000, which was less than one third of the amount to which they would have been entitled upon an adjustment of their claim as for a total loss, and to cancel the policy; and compensation for the loss was subsequently made by the French government, $5000 of which compensation the commissioners under the French treaty awarded to the underwriters; *Held*, that upon the compromise with the insurers and the cancelling of the policy the whole of the claim to indemnity against the French government belonged to the assured; *Held also*, that the decision of the commissioners was not conclusive between the parties, as to which of them was entitled to the indemnity money under the treaty; *Held further*, that the representatives of the assured were authorized to file a bill in chancery, to recover the money which the underwriters had obtained from the government of the United States, under the award of the commissioners; although they had a concurrent remedy by an action at law, against the insurers, for money had and received to their use.

The court of chancery is not at liberty to relinquish its ancient and acknowledged jurisdiction of a case, although courts of law now afford a remedy to parties in like cases by the equitable action of assumpsit.

May 7.  THIS was an appeal from a decision of the vice chancellor of the first circuit overruling a demurrer to the complainants' bill. In 1817, Icard, Mumford and Roulet, the last of whom together with the personal representatives of the two first are the complainants in this cause, shipped a cargo of coffee, sugar, and logwood for Marseilles, as joint owners; upon which cargo the defendants became insurers to the amount of $15,000. The ship and cargo were after-

wards seized in the port of Marseilles, under the Berlin and Milan decrees, and finally condemned. After the seizure the assured offered to abandon to the underwriters, who declined to accept the abandonment and pay as for a total loss. A compromise was afterwards effected between the parties, by which the assured consented to receive $5000, and to surrender up the policy ; which sum was less than one third of the amount to which they would have been entitled from the underwriters upon an abandonment to them of the *spes recuperandi.* Compensation for the loss was allowed by the commissioners, under the subsequent treaty with France; but instead of allowing the whole amount to the representatives of the owners of the cargo they allowed $5000 of the compensation to the defendants, on the ground that they supposed them entitled to the same because they had paid that sum upon the compromise of the claim against them as insurers. And the bill in this cause was filed for the purpose of obtaining the money and certificates which had come into the hands of the defendants under that decision of the commissioners.

The following opinion was delivered by the vice chancellor upon the making of the decree which was appealed from :

M'COUN, V. C.  The leading question in this cause is whether the award of the $5000 to the defendants, by the commissioners appointed under the French treaty and the act of congress of the 13th July, 1832, is conclusive upon the rights of the present litigant parties ?

Upon the authority of *Comegys* v. *Vasse*, (1 *Peters*, 193,) and the reasoning of Judge Story in that case, I am of opinion that the award is not thus conclusive. Although it is expressed in article 1st of the treaty that the government of the United States shall distribute the money among those entitled, in the manner and according to the rules which it shall determine ; and the act of congress prescribes the duty of the commissioners to be *to receive and examine* all claims which may be presented to them under the conventions which are thereby provided for, according

to the provisions of the same, and the principles of justice equity and the law of nations, and gives to the commissioners authority to make all needful rules and regulations for carrying their commission into full and complete effect ; and although, by a subsequent section of the act, the commissioners are to report a list of the several awards made by them, upon which the secretary of the treasury shall distribute in rateable proportions, among the persons in whose favor the awards shall have been made, such monies as may have been received into the treasury according to the proportions which their respective awards shall bear to the whole amount then received; and the secretary of the treasury is to issue certificates shewing the proportion which each one may be entitled to, of the amount that thereafter may be received, and such certificates are afterwards to be paid at the treasury, &c. to the legal holders of the certificates ; and although in making the payments, the secretary of the treasury shall first deduct such sums of money as may be due the United States from the persons in whose favor the award shall be made ; yet the principle must be the same as in *Comegys* v. *Vasse*, which arose under the Spanish treaty. There, by the 11th article of the treaty itself, commissioners were appointed to ascertain the full amount and validity of the claims, and within the space of three years (under the French treaty two years was the time limited) they were to receive, examine and decide upon the amount and validity of all the claims, &c. and they were authorized to hear and examine on oath every question relative to the said claims and to receive all suitable authentic testimony concerning the same, &c. The commissioners awarded a sum of money to the assignees in bankruptcy of Vasse, who afterwards brought an action against them for the money as rightfully belonging to him ; and though the case was decided against him upon other grounds, it was held that the decision and award of the commissioners did not of itself constitute a bar or preclude his right. (*See* 1 *Peters*, 212.) So under the French treaty and the act of congress referred to, I think the awards of the commissioners are only to be considered as ascer-

1839.

Varet
v.
N. Y. Ins. Co.

taining what were proper claims upon the fund, and the amount of the respective claims, and to whom as between individuals and the government the money might be legally paid ; and not as settling the conflicting rights and equities of third persons who may be interested in or entitled to participate in the money, after the government has paid it to those in whose favor the award is made. These are matters more properly belonging to the ordinary tribunals of the country, and with which government has no immediate concern. It could hardly have been the intention of congress, in establishing this commission and prescribing as they have done the powers and duties of the commissioners, and of the secretary of the treasury in making the distribution, to determine all such conflicting claims among individuals. The reasons for this conclusion are well given in *Comegys* v. *Vasse*, and apply with equal force in the present case, notwithstanding some differences in the provisions of the treaties, and of the acts of congress carrying them into effect. The demurrer cannot therefore be sustained upon the ground of the conclusive and binding nature of the award, as respects the right claimed by the bill to call the money out of the hands of the defendants.

The next question is, whether enough is shown by the bill to entitle the complainants to any relief. I am inclined to think the allegations of the bill are insufficient to raise an equity for that purpose. The fact that the defendants rejected the offers of abandonment and declined to pay for a total loss upon the policy of insurance, preferring to pay $5000 by way of compromise as for a partial loss, without an assignment or cession of the right of the assured to recover the subject insured, or any part thereof, or indemnity therefor, and upon the understanding that no interest in the property insured or its proceeds, or in any indemnity or account thereof, passed to or vested in the defendants, goes strongly to show that as between the contracting parties the *spes recuperandi* and all the benefit of it, even to the extent of the $5000 thus paid, remained with the assured. If this statement of the bill be true, and the property itself had been restored, it would still have belonged to the as-

1839.

Varet
v.
N. Y. Ins. Co.

sured. And must not the money paid by the government, on account of the property which was not restored, have the same destination, and rightfully belong to the same owners? From this short view of the case I do not feel warranted in saying, that the defendants may not be regarded trustees of the complainants in respect to the receipt of the five thousand dollars, and that the complainants may not follow it into their hands.

This disposes of the demurrer, unless the complainants are to be turned over to their action at law, for money had and received. The remedy there may be difficult and doubtful in these respects: whether it should be undertaken in the joint names of the complainants or upon the ground of a partnership in the cargo insured; whether it should be prosecuted in the name of Roulet, as the surviving partner of Icard & Mumford in the adventure, or whether the claims of the complainants should be treated as several and distinct interests, requiring three several suits for aliquot parts of the $5000. To avoid these doubts and difficulties, I am disposed to say this court will entertain jurisdiction upon the present bill. The demurrer must therefore be overruled, with costs.

*A. H. Dana*, for the complainants. The decision of the commissioners is not a bar to this claim. To be so, there should have been authority given to them to decide finally upon conflicting claims to the fund; and they must have actually decided in pursuance of such authority, after hearing the parties. But no such authority was given to them. They are directed to examine claims, but no directions are given as to the manner in which parties are to be heard, nor what the commissioners are to decide. It was necessary to designate persons in whose favor the awards should be made, in order that the government of the United States might discharge itself of its trust by paying over the fund to them; but this could not conclude the rights of persons having equitable claims upon the fund awarded. The granting to the commissioners of an authority beyond this would have exceeded the authority which congress had the right to bestow upon them. The fund having been received for the benefit of

those entitled, all that the government had to determine was what claims were good as against France. They had no arbitrary power to prevent the equitable rights of individuals, to the benefit of the sums awarded, from being tried by the ordinary tribunals of the country. The question here is not between citizens of this country and the French government ; but between the citizens themselves. It would not have been within the constitutional power of congress to have invested the commissioners with power to decide absolutely on such questions. Congress cannot establish any tribunals to determine private rights, except such as as are authorized by the constitution. They may establish judicial tribunals inferior to the supreme court. But the vesting of a summary authority in the commissioners, without appeal, would be to establish a court superior to the supreme court of the United States. The right of a claimant to the benefit of the fund awarded is a legal one, and as such is cognizable by the ordinary judicial tribunals. The fund was not a donation or gratuity to the claimants. Under the Florida treaty, where the power of the commissioners was not defined in express terms, it has been held that the commissioners had not authority to decide finally between the claimants. In this case the commissioners did not intend to decide finally upon the conflicting claims of individuals ; and they never exercised the proper judicial authority for that purpose. Their proceedings were entirely ex parte.

The loss of the insured in this case was total ; the claim upon the French government for indemnity being all that was left. The defendants, upon the compromise with the assured, required no cession of the claim for indemnity, and none was made. It was in fact the understanding that they were to have no interest in such claim. There was, therefore, no right derived from the complainants by cession or contract. Neither had the defendants any equitable claim upon the ground of having paid part of the loss. They were liable for the whole loss, and a discharge from two-thirds of the amount for which they were liable, was an ample compensation for the *spes recuperandi*. The insured

1839.

Varet
v.
N. Y. Ins. Co

are, therefore, to be considered the purchasers of that hope whether it should turn out to be more or less valuable. The commissioners allowed for the whole claim less than half the amount of the actual loss. The complainants ought, therefore, to have the whole amount of their actual damage, as they have received but half. The defendants could not in any event be equitably entitled to more than that proportion ; that is, the half of what they paid on the compromise. And from that should be deducted the premium of insurance, which was included as part payment. '

*G. F. Tallman,* for the defendants. The board of commissioners appointed under the act of congress, were authorized and required to examine into and determine not only upon the validity and amount of all claims to indemnity, but also as to the persons who were entitled to the same. The award, therefore, is final and conclusive as to all questions decided by them which were within their jurisdiction. And the claim of the complainants having been submitted to the board of commissioners and rejected by them, their decision is final, and cannot be re-examined in this or any other court.

The award in favor of the defendants was correct and just ; as they had actually sustained a loss by the act of the French government. But even if the defendants were not entitled to the award made in their favor, the complainants have no right to recover it from them. The United States only are entitled.

Again ; the complainants' remedy, if any, is at law.

The Chancellor. The vice chancellor was clearly right in overruling the demurrer in this cause, notwithstanding the objections to the complainants' right to relief upon the case made by their bill. There is no substantial difference in respect to awards made by the commissioners under the recent French treaty, and similar awards made under the previous treaty with Spain. The decision of this court in *Delafield* v. *Colden,* (1 *Paige's Rep.* 139,) and a similar decision of the supreme court of the United States, in *Comegys* v. *Vasse,* (1 *Peters' Rep.* 193,) which. was made about

the same time, in cases arising under the Spanish treaty, are, therefore, authorities in point to show that the decision of the commissioners, awarding to the defendant a part of the fund given as an indemnity for the cargo taken by the French government, is not conclusive as between them and these complainants.

That the whole amount allowed for the seizure of the cargo belonged exclusively to the complainants, equitably as well as legally, cannot, I think, be doubted. If the underwriters, when there was a technical total loss of the cargo by the seizure, had accepted the abandonment and paid the $15,000, which they agreed to pay in such case, together with the expenses to which the assured had been subjected in endeavoring to save the property, they would unquestionably have been subrogated to the rights of the assured as to that part of the cargo which was insured by the defendants ; and the indemnity allowed by the treaty, to that extent, would have belonged to them. But by compromising the claim made by the assured for a total loss, without accepting the abandonment or stipulating for an interest in the *spes recuperandi,* the underwriters must be considered as having relinquished any claim or interest in the future chance of recovery from the French government ; in consideration of the relinquishment by the assured of their right to the other two thirds of the insurance money, in case the loss should eventually turn out to be total. And having by the compromise secured to themselves an exemption from this portion of their liability, in case the loss should be total, the underwriters cannot in equity or conscience insist upon the repayment of what they paid to the assured upon that compromise ; although the result of such compromise has been favorable to the assured.

Although it is probable that an action for money had and received might have been sustained in this case, in the name of the surviving owner of the cargo, the case of *Randal* v. *Cochran,* (1 *Ves. sen.* 98,) shows that a remedy in equity is also given ; upon the ground that the person receiving the fund under such circumstances is a trustee thereof, for the benefit of the party who is equitably entitled to the same.

The equitable action of assumpsit is now allowed in many cases of this kind, where the remedy originally was in equity only. But the fact that a remedy now exists at law in such cases, does not deprive this court of its ancient jurisdiction to grant relief here. Or, in the language of an English chancellor, this court is not at liberty to give up its jurisdiction because courts of law have fallen in love with it. But I admit it probably would be wise in the legislature to take from this court a great portion of the jurisdiction which is now concurrent with courts of law, and confine it exclusively to those courts; where the parties could have the benefit of an open examination of the witnesses in the presence of the court and jury.

The decision of the vice chancellor overruling the demurrer in this case is affirmed, with costs.