HENRY J. HUBBARD

v.

UNITED STATES MORTGAGE COMPANY ET AL.

1. TRUSTS—CONCURRENT JURISDICTION.—Where money is sought to be recovered from one as trustee, the fact that the *cestui que trust* has a remedy at law by action for money had and received, will not deprive a court of chancery of jurisdiction.

Hubbard v. U. S. Mortgage Co. et al.

2. SAME.—Where it was admitted by the bill that complainant, as the holder of a portion of a mortgage debt purchased of the mortgagee, was entitled to the benefit of the mortgage security, and to share in the proceeds of the mortgage sale and, after deducting the costs and expenses of sale and such disbursements as the mortgagee had made under the stipulations in the mortgage, the residue of said proceeds constituted a fund in the hands of the mortgagee to be applied by it to the payment of the mortgage debt. *Held*, that complainant has a right to recover against the mortgagee a money decree for his distributive share of the net proceeds; that the mortgagee in executing the power of sale and in receiving and distributing the proceeds of the mortgage security was the trustee of an express power, and especially was this the case after it had transferred to an assignee a portion of the mortgage debt.

3. DEMURRER.—Where the fact that a debt sought to be collected is barred by the Statute of Limitations appears on the face of the bill, advantage may be taken of the bar on demurrer.

4. STATUTE OF LIMITATIONS—NON-RESIDENT CORPORATION.—A corporation must dwell in the place of its creation, and can not migrate to another jurisdiction. Where it appeared upon the face of a bill that, while complainant's cause of action arose more than five years before the commencement of the suit, yet the defendant corporation, at the time the cause of action arose, was, and ever since that time had been, a non-resident of the State. *Held*, that the Statute of Limitations did not run.

5. SAME—DOING BUSINESS BY AGENTS.—While a corporation created in one State, which has been continuously doing business in another State by its agents for years, will bring itself during all that time within the jurisdiction of the latter State, yet as there is no legal presumption that this corporation was in this State by its agents in such a manner as to enable it to avail itself of the bar of the Statute of Limitations, nor does such fact appear by the bill, the court is of opinion that its absence is sufficiently alleged to bring the case within the exception in the statute.

6. EXPRESS TRUST.—Where money sought to be recovered is held by the defendant as trustee of an express trust, the Statute of Limitations can not commence to run until the trustee disclaims the trust, or assumes a position adverse to the complainant.

7. LACHES.—Mere laches alone, short of the period fixed by the Statute of Limitations as a bar, will not preclude the assertion of an equitable right where the adverse party is not lulled into security by the delay, or prejudiced thereby.

8. CHANCERY PRACTICE.—Relief which is consistent with the facts stated in the bill will be granted under the general prayer, although not specifically prayed for.

ERROR to the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding. Opinion filed November 16, 1883.

Mr. Charles L. Easton, for plaintiff in error; as to the relation of trustee and *cestui que trust,* cited Perry on Trusts, § 920.

By the terms of the mortgage on foreclosure, the proceeds of the sale are to be applied on the whole debt: Humphreys v. Morton, 100 Ill. 592.

The remedy of the complainant is only adequate and complete in a court of chancery: Hearne v. Hearne, 55 Me. 445; Himes v. Keighblingher, 14 Ill. 469; Dias v. Brunell, 24 Wendell, 8; Pardoe v. Price, 16 M. & W. 450; Bartlett v. Dimond, 14 M. & W. 49; Curtis v. Smith, 6 Blatch. 537; State v. Digges, 21 Md. 240; Dorsey v. Garey, 30 Md. 489; Hukell v. Page, 6 Bissell, 183; Brooks v. Brooks, 11 Cush. 18; White v. Sheldon, 4 Nev. 280; Perry on Trusts, § 843; Hill on Trusts, § 42; Story's Eq. Jur. § 962.

The Statute of Limitations will be a bar only when the trustee repudiates the express trust by clear and unequivocal acts or words, and claims to hold thenceforth the estate as his own, not subject to any trust, and such repudiation and claims are brought to the notice of the *cestui que trust* in such manner as to require him to act upon a clearly asserted adverse title: Merriam v. Hassam, 14 Allen, 522; Baker v. Whitting, 3 Lunn. 486; Albretch v. Wolf, 58 Ill. 186; O'Halloran v. Fitzgerald, 71 Ill. 53; Perry on Trusts, §§ 863-4; Bigelow on Estoppel, 3d ed. 427.

Where a demand is necessary, the Statute of Limitations will not commence to run until a demand is made: Lillie v. Hoyt, 5 Hill, 400; Baird v. Walker, 12 Barb. 298; Hitchcock v. Hitchcock, 13 Barb. 632; Stafford v. Richardson, 15 Wend. 305.

Messrs. Dexter, Herrick & Allen, for defendants in error; that complainant had a complete and adequate remedy at law, cited R. S. 1881, Ch. 2; Hancock v. Harper, 86 Ill. 449; Barnes v. Johnson, 84 Ill. 95; Belden v. Perkins, 78 Ill. 449; Claflin v. Godfrey, 21 Pick. 1; Cook v. Basley, 123 Mass. 396; Rogers v. Dashiell, 8 Allen, 343; Pomeroy's Eq. Jur. 164; Crooker v. Rogers, 58 Me. 339; Catlin v. Birchard, 13

Mich. 110; Eddy v. Smith, 13 Wend. 488; Taylor v. Turner, 87 Ill. 296.

When courts of law have concurrent jurisdiction with courts of equity and the party proceeds in equity, if barred at law, he will also be barred in equity: Manning v. Warren, 17 Ill. 267; Sloan v. Graham, 85 Ill. 26; Hancock v. Harper, 86 Ill. 445; Kane v. Bloodgood, 7 Johns. Ch. 90; Pratt v. Northam, 5 Mason, 95; Etting v. Marx, 4 Fed. R. 673; Hall v. Russell, 3 Sawy. 515; 2 Story's Eq. Jur. § 1520; Tiernan v. Rescariere, 10 G. & J. 217; Breckenbridge v. Churchill, 3 J. J. Marsh, 11; Wood on Limitations, § 58; Godden v. Kimmel, 99 U. S. 201.

Where the Statute of Limitations is a bar to a complainant's case in equity and this bar appears on the face of his bill, advantage may be taken of it by demurrer: Ilett v. Collins, 103 Ill. 74; 1 Dan. Ch. Pr. (5th ed.) 560–1.

A plaintiff who relies on an exception from the Statute of Limitations must plead and prove it; the defendant did not negative the exception: Wood on Limitations, 17; Bevan v. Cullen, 7 Barr. 281; Moore v. Capps, 4 Gilm. 315.

If the company had agents here who could have been served with process, the Statute of Limitations would run in its favor: Penn. Co. v. Sloan, 1 Bradwell, 364; McCabe v. R. R. Co. 14 Rep. 450; Guinn v. I. C. R. R. Co. 14 Rep. 463.

Complainant is barred by his laches: Furlong v. Riley, 103 Ill. 628; Story's Eq. Pl. §§ 484, 751; Lansdale v. Smith, 15 Rep. 385; Munn v. Burges, 70 Ill. 606; Dempster v. West, 69 Ill. 613; Burr v. Borden, 61 Ill. 389; Cox v. Montgomery, 36 Ill. 396.

BAILEY, J.    The writ of error in this case brings up for review the decree of the court below, sustaining a demurrer to and dismissing the bill for want of equity. So far as material to the questions urged by counsel in their arguments, the case made by the brief is briefly as follows:    On the 2d day of August, 1872, Almon G. Sanford being indebted to the United States Mortgage Company, a corporation created by the legislature of the State of New York, in the sum of $10,000, for money loaned, executed and delivered to said company, as evidence

of said indebtedness, his bond in the penal sum of $20,000, conditioned for the payment to said company, its successors or assigns, said principal sum of $10,000 on the first day of October, 1877, with interest at the rate of nine per cent. per annum, payable semi-annually, on the 1st day of April and October in each year, until said principal sum should be paid, said interest being further evidenced by eleven interest coupons, the first for $150 and the residue for $450 each.

To secure the payment of said bond and coupons, said Sanford and wife, on said 2d day of August, 1872, executed to said mortgage company a mortgage upon certain real estate in Cook county, Illinois. In said mortgage it was provided that if said company should expend any money, either in effecting insurance on the mortgaged premises, or in payment of taxes or assessments, or in redemption from sales therefor, or to protect the title or possession of said premises, or any part thereof, the moneys so paid should be a charge on said premises, and be secured by said mortgage, and draw interest at the rate of ten per cent. per annum. Also, that if default should be made in the payment of any of said interest for one month after the same should become due, according to the condition of the bond, the principal sum, together with all arrearages of interest thereon, should, at the option of said company, thereupon become due and payable, and collectible immediately or at any time thereafter, and in case of default in the payment of the principal, or of the interest, or any part thereof, at the time the same should become due according to the condition of the bond, said company, its successors, or assigns, might sell said mortgaged premises at public auction after giving certain notice, and out of the proceeds pay: (1) the costs, charges and expenses of the advertisement, sale and conveyance; (2) all moneys paid by said company for insurance, taxes, assessments, or to protect the title or possession of said premises; (3) all of said principal money and accrued interest thereon that should, at the time of the sale, remain unpaid, and (4) render the surplus, if any, to said Sanford, his heirs or assigns.

On the fourth day of December, 1874, Henry J. Hubbard,

Hubbard v. U. S. Mortgage Co. et al.

the complainant, purchased of said mortgage company, coupons numbered 4 and 5, maturing respectively the first day of April and October, 1874, paying said company therefor the sum of $954.43, the amount then due on the same, and received said coupons from said company, said coupons being so purchased by the complainant on the faith of their being secured by said mortgage. Said company afterward, claiming that default had been made, for more than one month, in the payment of the eighth interest coupon, which matured April 1, 1876, and claiming to act under the power contained .in said mortgage, elected to declare the whole of said mortgage due, and advertised the mortgage property for sale, and sold the same on the 28th day of December, 1876, to Samuel D. Babcock, its president, for $10,000, and caused a deed of said property to be executed to said Babcock, said deed being recorded January 30, 1877. The complainant is still the owner of said coupons .4 and 5 and has owned them ever since he purchased them, and no part of them has ever·been paid or satisfied. Shortly before filing the bill, the complainant demanded payment of said coupons of said mortgage company, which was refused, the company claiming that the complainant did not purchase said coupons, but acted as the agent of said Sanford, in paying to said company the amount due thereon. The purchase of said premises, at said mortgage sale, by said Babcock, as the bill alleges, was made by him for and on behalf of said mortgage company, and the title thereby obtained is held by him for said company. The bill further alleges that there was no provision in said mortgage empowering the mortgagee to become a purchaser at said mortgage sale, and claims that the sale for that reason was inoperative, and conferred no title upon the purchaser.

The bill as originally filed, prayed that the complainant be decreed to have a lien on the mortgaged premises prior to that of the mortgage company, and that said Sanford be decreed to pay the amount due the complainant, and in default of such payment that the mortgaged premises be sold, and the proceeds applied to the satisfaction of the same; or if it should be

deemed more equitable that an account be taken of the amount, the mortgage company and the complainant be allowed to pay the same, and on such payment that said Babcock and said company be ordered to convey to the complainant their interest in said premises, and that said premises be sold to pay the amount due the complainant, and the amount so paid by him to said company and costs, and that the defendants be foreclosed of their equity of redemption and for such other or further relief as might be equitable. An amendment to the bill was afterward filed, charging the insolvency of said mortgage company, and alleging a fraudulent conspiracy between said company and said Babcock to acquire title to said premises in the manner stated in the bill, with the intention of cheating the complainant out of the amount due him, and praying for a decree against said Babcock therefor.

Counsel for the appellees urge in support of the decree, 1, that the complainant is shown by the bill to have an adequate and complete remedy at law, and therefore, that a court of equity has no jurisdiction, and 2, that upon the face of the bill, the complainant's action appears to be barred, first, by the Statute of Limitations, and secondly, by his laches.

Counsel have limited their discussion of the case to the complainant's right to recover against the mortgage company a money decree, for his distributive share of the net proceeds of the mortgage sale, and we shall, therefore, consider the sufficiency of the bill in that aspect alone, expressing no opinion as to whether the complainant has shown himself entitled to any portion of the other relief specifically prayed for.

Taking the averments of the bill as true, and they are so admitted by the demurrer, there can be no doubt that the complainant, as the holder of a portion of the mortgage debt, was entitled to the benefit of the mortgage security and to share in the proceeds of the mortgage sale. After deducting the costs and expenses of sale and such disbursements as the mortgagee had made under the stipulations in the mortgage, the residue of said proceeds constituted a fund in the hands of the mortgagee to be applied by it to the payment of the

Hubbard v. U. S. Mortgage Co. et al.

mortgage debt. About this there seems to be no dispute. The question is, can the complainant recover his share of said fund in equity, or must he resort to his action at law for money had and received?

We are not prepared to say that an action at law will not lie. It is to be observed, however, that the amount to which the complainant is entitled, so far as appears is still unascertained, and can only be arrived at upon an accounting with the mortgage company in respect to the costs, expenses and disbursements it is entitled to deduct before making distribution, and this fact is urged as a serious obstacle in the way of maintaining such action. But whether such action could be maintained or not is by no means decisive of the jurisdiction of equity. The mortgage company in executing the power of sale and in receiving and distributing the proceeds of the mortgage security, was the trustee of an express trust. Especially was this the case after it had transferred to an assignee a portion of the mortgage debt. It then became charged with the duty, on converting the security into cash, of administering the proceeds, not for itself alone but also for the benefit of its assignee.

The jurisdiction of courts of chancery in cases of trusts was originally exclusive. Courts of law in many cases, however, now afford a remedy by means of the equitable action for money had and received, where the remedy was originally in equity only. But the assumption of this jurisdiction by courts of law has not taken it away from courts of equity. In this respect their jurisdiction is now concurrent. It was so held in McCrea v. Purmort, 16 Wend. 460, on bill filed to recover of the defendant certain moneys which he had received as a trustee of the complainant. Mr. Justice Cowen, in delivering the unanimous opinion of the court of errors, says: " It is objected that the complainant had an adequate remedy at law. I need hardly say that the argument in that form is far from precluding relief by bill in equity. If the complainant had a remedy at law by action, for money had and received, which I think he had, yet equity has a clear concurrent jurisdiction. That is founded on the fact that

McCrea took the money as a trustee. The action for money had and received is in the nature of a bill in equity. There are numerous cases wherein courts of equity and law have proceeded upon the same ground to adminster each its own appropriate form of redress. There can not be a doubt that this is one of those cases." In Varet v. New York Ins. Co., 7 Paige, 560, a cargo upon which the defendant had written a policy was seized under the Berlin and Milan decrees and condemned. The complainant and defendant having adjusted the loss at $5,000, compensation to that amount was made by the French government and paid over to the defendant. On bill filed to recover said money from the defendant, it was objected that the complainant's remedy was at law, but it was held that although an action for money had and received might lie, still the complainant had his remedy in equity, since the defendant, receiving the fund under such circumstances, held the same as a trustee for the complainant. In deciding the case, Chancellor Walworth said: " The equitable action of assumpsit is now allowed in many cases of this kind, where the remedy originally was in equity only. But the fact that a remedy now exists at law in such cases does not deprive this court of its ancient jurisdiction to grant relief here. Or, in the language of an English Chancellor, this court is not at liberty to give up its jurisdiction because courts of law have fallen in love with it." The case was afterward affirmed by the court of error, on appeal, where the same doctrine was again announced. 24 Wend. 505. The present case does not differ in principle from those above cited, and we must therefore hold, that the bill makes a case within the jurisdiction of a court of chancery.

Is the complainants' suit barred by the Statute of Limitations? Where the fact that a debt sought to be collected is barred by the Statute of Limitations appears on the face of the bill, advantage may be taken of the bar on demurrer: Ilett v. Collins, 103 Ill. 74. Does such bar appear on the face of the bill in this case? The mortgage sale is averred to have been made by the defendant on the 28th day of December, 1876, and the bill was not filed until May 5, 1882, more than

Hubbard v. U. S. Mortgage Co. et al.

five years thereafter. But if it is assumed that the complainant's claim might be barred in five years, the bill shows that the defendant is a corporation created by the legislature of the State of New York. It necessarily follows that it is a resident of that State, for as held in Bank of Augusta v. Earle, 13 Pet. 519, it must dwell in the place of its creation, and can not migrate to another jurisdiction. It thus appears upon the face of the bill that while it is true that the complainant's cause of action arose more than five years before the commencement of the suit, yet the defendant, at the time the cause of action arose, was, and ever since that time has been, a non-resident of this State, thus bringing the case within the exception provided for in the eighteenth section of the statute. True, if the corporation had been continuously doing business in this State by its agents during the entire five years, thus bringing itself during all that time within the jurisdiction of the courts of this State, the statute would, notwithstanding its corporate non-residence, have run against it: Pennsylvania Co. v. Sloan, 1 Bradwell, 364. But there is no legal presumption that it was in this State by its agents in such manner as to enable it to avail itself of the bar of the statute, nor does such fact appear by the bill, and we must therefore hold that its absence is sufficiently alleged to bring the case within the exception in the statute.

We are, however, inclined to the opinion that, as the money sought to be recovered is held by the defendant as trustee of an express trust, the statute could not commence to run until the trustee disclaimed the trust, or assumed a position adverse to the complainant, and this was not done, so far as appears by the bill, until about two weeks prior to the commencement of the suit, when the complainant alleges that he demanded payment. A question may also arise as to whether the complainant's cause of action does not arise upon the stipulations of the mortgage itself, so as to be upon a written contract within the meaning of the sixteenth section of the Statute of Limitations, and so subject to the limitation of ten years.

What we have already said disposes also of the question of

laches. As held in Gibbons v. Hoag, 95 Ill. 45, mere laches alone, short of the period fixed by the Statute of Limitations as a bar, will not preclude the assertion of an equitable right, where the adverse party is not lulled into security by the delay, or prejudiced thereby. Nothing appears showing that the defendant was or could have been prejudiced by the delay, and laches, therefore, can not be interposed as a defense.

It is further insisted that the prayer of the bill is not sufficient to warrant a decree in favor of the complainant for the payment to him of his proportion of the proceeds of the mortgage sale. It is true that such decree is not specifically prayed for, but the bill contains a general prayer for relief, and under that prayer, such decree may properly be granted.

Thus, in Stanley v. Valentine, 79 Ill. 544, it was held that relief which is consistent with the facts stated in the bill, will be granted under the general prayer, although not specifically prayed for. See, also, Isaacs v. Steel, 3 Scam. 97; Bruner v. Manlove, Id. 339; Bryan v. Primm, Breese, 59; Curyea v. Berry, 84 Ill. 600.

For the error of the court below in sustaining the demurrer to the bill, the decree will be reversed and the cause remanded.

Decree reversed.