# Charles F. Forster, Appellant, v. The Brown Hoisting Machinery Company, Appellee.

## Gen. No. 18,742.

1. PATENTS, § 12*—*how inventor's rights under contract affected by patent by officer of expectant assignee.* On a bill for an accounting and for specific performance of a contract under which complainant was to assign to defendant patents on certain machinery if taken out by him, complainant to receive royalties on sales, correspondence of defendant's predecessor was *held* not to intimate that one of its officers acted as complainant's agent in taking out patents on certain devices in connection with such machinery, or that such patents covered anything invented by complainant or contemplated in the agreement with him.

2. PATENTS, § 12*—*how contract for future assignment construed.* Contract between complainant and defendant's predecessor construed as providing that only in case complainant procured patents on a certain combination of machinery within a certain time, and the assignment of same to defendant's predecessor, was the latter to pay the costs of securing the patent and to pay royalties thereon, and hence not to render it liable for royalties on devises in connection therewith patented by one of its officers, a patent to complainant having been refused.

3. PATENTS, § 2*—*when State Court without jurisdiction.* On a bill for an accounting and for specific performance of a contract under which complainant agreed to assign to defendant's predecessor patents on a certain combination, if taken out by him, a patent to complainant having been refused on the ground that some of the claims did not cover combinations, that others were improperly presented in a single application and that several of the claims were covered by patents issued to third persons and to an officer of defendant's predecessor, contentions that a patent was improperly refused to complainant and improperly granted to such officer as the original inventor are not within the jurisdiction of the State courts.

4. PATENTS, § 34*—*when bill for accounting and specific performance barred by laches.* Where under his contract with defendant's predecessor complainant was to receive royalties in the event of his taking out patents on a certain combination and assigning same to defendant's predecessor, but a patent was refused to complainant partly on the ground that the claims did not cover a combination and partly because they were already covered by patents

*See **Illinois Notes Digest, Vols. XI to XV, same topic and section number.**

issued to an officer of defendant's predecessor, which decision complainant did not contest in the proper tribunals, a bill for an accounting and for specific performance of the contract on the ground that the patents to such officer were in fraud of complainant and obtained through his knowledge of complainant's scheme is barred by laches where no action was taken during a period of twelve years, the patentee having died in the meantime.

5. EQUITY, § 79*—*when laches not affected by statute of limitations.* The doctrine that a foreign unlicensed corporation cannot, because of its nonresidence, avail itself of a statute of limtations which does not run during nonresidence is inapplicable to a defense based on laches.

Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 30, 1914.

**Statement by the Court.**  This is an appeal from a decree of the Superior Court of June 13, 1912, dismissing for want of equity the bill of the appellant (who was complainant below) originally brought against the appellee Company on August 16, 1911.

The bill was twice amended and the dismissal followed an order sustaining a demurrer to said second amended bill, the complainant electing to stand by said second amended bill. The said second amended bill contains these allegations:

"That Charles F. Forster, complainant, is a resident of Cook County, Illinois;

That The Brown Hoisting Machinery Company, defendant, is a corporation organized in Delaware and having its principal place of business in Cleveland, Ohio;

That it is a successor and consolidation of the Brown Hoisting & Conveying Machine Company organized in Ohio in 1881;

That the latter company was succeeded by the defendant company about October 1, 1900, the changes being of name and amount of capital stock, the personnel of the management of the said companies remaining unchanged;

---

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

Vol. CLXXXV 34

That one Alexander E. Brown, who died in 1911, was an officer and a large stockholder in the Brown Hoisting & Conveying Machine Company and a vice-president and director of its successor, the defendant company;

That it was not until after the preparation of the original bill in this cause had been begun that the complainant learned accidentally of the death of said Alexander E. Brown;

That neither the defendant company nor its predecessor had at the time this suit was instituted complied with the foreign corporation Act of Illinois;

That before August 1, 1894, the complainant was the first inventor of an improvement in pig breaking apparatus, not known or used by others, nor patented or described in any printed publication nor in public use or on sale for more than two years prior to his application for a patent therefor;

That the complainant called Alexander E. Brown, the manager of the predecessor of defendant company, into consultation with him about said improvement;

That working under and by virtue of the directions of the complainant, the predecessor of the defendant company in the period of time from August 1, 1894, to January 1, 1899, built and put into full operation at South Chicago, Illinois, in the plant of the Iroquois Furnace Company, a pig breaking apparatus embodying the ideas the complainant had conceived;

That the ideas so conceived 'consisted of a pig breaking machine having horizontal plungers combined with overhead carriers and a series of hooks connected to the same for the purpose of grappling the sows and pigs from the pig bed of a cast house, and thereby suspending the pigs thereof vertically from said overhead carrier during the process of breaking said pigs from the sow';

That correspondence made a part of the bill by exhibits numbered from 3 to 17 will show that Alexander E. Brown repeatedly 'recognized the priority of' complainant's 'conception relative to the new and useful improvement aforesaid';

That February 17, 1899, a certain agreement in writing was made between the complainant, the predeces-

sor of the defendant company, and the Iroquois Furnace Company,—of which the complainant was at that time general manager—which is made exhibit 1 to the bill.''

*Note. The bill contains at this point what purports to be the effect of said agreement. As the proper construction of it is one of the essential factors in this cause, the agreement itself is here inserted:*

"Exhibit 1.

It is hereby mutually agreed between the Brown Hoisting & Conveying Machine Company, a corporation, The Iroquois Furnace Company, a corporation, and C. F. Forster, that the several matters and things in dispute between them growing out of the contract in relation to the sale and purchase of the Pig Handling and Breaking Machinery erected by the Brown Hoisting & Conveying Machine Company at the plant in South Chicago of the Iroquois Furnace Company are hereby compromised and settled upon the following terms, viz:

1.    The Iroquois Furnace Co. is to pay at the execution hereof the sum of nine thousand seventy-two dollars and fifty-eight cents ($9072.58) as the balance of the full purchase price of ten thousand dollars less the amount of the bill of the Iroquois Furnace Company for labor and materials amounting to $877.42 and also less $50 to cover sundry repairs.

2.    The said Hoisting Company agrees to accept the accumulator heretofore furnished, F. O. B. cars Chicago and to cancel their bill therefor, and also to pay for the accumulator weights an amount at the rate of $11.00 per net ton for the same, also to deliver without charge to the Iroquois Furnace Co. f. o. b. cars Chicago, the bronze bushings heretofore held by them for a formal order as per correspondence.

3.    In case within two years from the date hereof said Charles F. Forster shall obtain U. S. Letters Patent on any invention by him which broadly covers the combination embraced in said Pig Iron Handling and Breaking machinery as now constructed, then the said Hoisting Company agrees to make good to him all outlays by him for solicitors' and government fees neces-

sarily made in so obtaining or applying for such letters patent, and the said Forster agrees on his part to thereupon assign the said letters patent to the said Hoisting Company, its successors and assigns, and upon such assignment to it the said Hoisting Company agrees that it will allow and pay the said Forster during the life of the said assigned patents a sum ranging between $2,500 and $4,000 for each and every complete Pig Handling and Breaking Machine built by the said Hoisting Company under such assigned patents, the precise sum within the above limits to be in proportion to the capacity of the furnace in each case.

In case said Forster tenders a written order for said complete machinery covered by the said patent assigned from any reasonable party and the said Hoisting Company, for any reason, declines to accept the same, then said Forster shall have the right on his own responsibility to himself accept and fill such order unless the said Hoisting Company shall pay said Forster $500.00 and expenses not exceeding $500 more necessarily incurred by him in getting such order, and in case under the above conditions the said Forster accepts and executes such order he shall have full right to make, use and sell for the purpose of such order the Pig Handling and Breaking Machinery covered by said patent, and such other patents of the said Hoisting Company as entered into the construction of said machinery at the plant of said Furnace Company in South Chicago at the date hereof.

It is understood that the tender above referred to shall not oblige the said Hoisting Company to complete the machinery included therein in a shorter time than six months from date of its acceptance and the receipt of full information and dimensions.

The said Hoisting Company is to furnish said Forster with one complete set of blue prints covering the said Handling and Breaking machinery to be used for the purpose of applying for the patents as above referred to.

In testimony whereof the said Brown Hoisting and Conveying Machine Co. by F. G. Tallman, its manager, and the said Iroquois Furnace Co. by Chas. F. Forster, its General Manager, and said Charles F. Forster for

himself have hereunto subscribed their respective corporate names and individual signatures at Chicago, Cook County, Illinois, on the seventeenth day of February, A. D. 1899.

> THE BROWN HOISTING & CONVEYING MACHINE CO.,
>     By F. G. TALLMAN, Manager.
> THE IROQUOIS FURNACE COMPANY,
>     By CHARLES F. FORSTER, General Manager.
>     CHAS. F. FORSTER.''

*Note: In the allegations of the bill proper this agreement is construed as providing that the complainant should obtain the letters patent described and assign them, etc.*

The bill contains the further allegations:

That in June, 1899, the complainant caused to be filed an application for the patent contemplated by the terms of the agreement of February 17, 1899, according to an application of which a copy is attached to the bill as Exhibit 17.

*Note. Said application contains claims numbered from 1 to 17. All except claims 13, 14 and 15 are for combinations of parts of a pig handling and breaking apparatus; Nos. 13, 14 and 15 are for described methods of breaking pigs and sows into commercial sized pieces.*

That ''contrary to the letter and spirit of the agreement of February 17, 1899, Alexander E. Brown filed an application on or about March 30, 1899, for letters patent for a new and useful improvement in pig breaking apparatus and that on July 4, 1899, there issued to said Brown letters patent 628069 for a new and useful improvement in pig breaking apparatus, wherein and whereby the said Brown claimed as new seven 'combinations' of parts of a pig handling and breaking apparatus or machine, which are specifically set out in the bill.''

*Note: The bill states that a certified copy of Brown's application is attached to the Bill as Exhibit 17, but no such copy appears in the record. Exhibit 17 is a copy of the application of Forster.*

"That the said letters patent issued on July 4, 1899, to said Brown covered the complainant's invention for which he was to secure letters patent contemplated by the agreement aforesaid to such an extent and so completely that when the complainant, acting with all due expedition by his patent attorney, made application for letters patent to cover the ideas of a pig handling and breaking machinery as hereinbefore described, he was completely blocked and prevented from obtaining the letters patent contemplated by said agreement of February 17, 1899, and that in an opinion, a copy of which is attached to and made a part of the bill, the Patent Commissioners stated Claims 7, 8, 9, 10, 11, 12, 13, 14 and 15 had been met by Brown 628069.''

*Note. The opinion is Exhibit 2 to the bill. The essential part of said opinion of the Examiner is: "The first twelve claims and claims 16 and 17 do not cover combinations. There can be no combination between the pig bed and a crane for carrying castings; a pig bed and a pattern; a pig bed and a pig iron breaker,—a pig bed and a hoisting apparatus, etc.*

*Applicant seeks to patent several devices in one application, viz: a conveyor, a hoisting apparatus, a pig breaker, a transfer ledge and a pattern. These devices belong to separate and distinct classes of inventions, and can not be claimed and patented in a single application    *    *    *    Division must therefore be required.*

*Claims 1, 2, 3 and 4 are anticipated by Kennedy 520685.    *    *    ***

*Claims 5 and 6 are anticipated by Kennedy cited when taken with Miller and George 518416.    *    *    ***

*Claims 7, 8, 9, 10, 11, 12, 13, 14 and 15 are met by Brown 628069 (Metal Rolling-Metal Breakers). Claims 16 and 17 are not illustrated. The claims are rejected.''*

"That with full knowledge of all the facts obtained as an officer of the defendant company and individually, the said Brown used the contract of February 17, 1899, as a cloak behind which to conduct his operations to the injury of the complainant;

That Brown and one Wing, counsel for the defendant company and its predecessor, conspired in drafting and presenting the claims of Brown to the Patent Office which resulted in Patent 628069, so as to include therein the entire subject matter of the invention and patent contemplated by the agreement of February 17, 1899; and that the claims set out in the Brown patent include in every particular the invention expressed in the contract of February 17, 1899, and exhibited in the machine built under the direction of the complainant by the predecessor company and installed at the plant of the Iroquois Furnace Company;

That these proceedings were fraudulent and in hostility to the agreement of February 17, 1899, and of the conception and claims of the complainant, of which the defendant through its officers and agents had knowledge;

That said Brown assigned his right, title and interest to said patent issued to him to the predecessor of the defendant company, but that said predecessor did not manufacture or sell any apparatus covered by said patent;

That the defendant company succeeded to all the assets of its predecessor, including said patent, and has manufactured and sold a hundred or more of pig breaking apparatus under and by virtue of either the assignment or license from Brown;

That as shown by the correspondence attached to the bill as exhibits, the predecessor of said defendant company endeavored to intimidate the complainant by efforts to differentiate and distinguish certain points relative to the invention of complainant and that Brown fraudulently and knowingly applied for and obtained a patent covering the matters which it was incumbent on the complainant to apply for and obtain a patent for under the contract—Exhibit 1—and for which he did apply for a patent within the two years mentioned in the contract;

That the complainant is advised that it is a presumption of patent law that at the time Alexander E. Brown aforesaid applied for the patent which he obtained July 4, 1899, he knew the prior state of the art as applied to cast house mechanism and the invention of

the complainant, and by obtaining the patent was the agent of the complainant, and therefore the terms of the contract were satisfied by the complainant through his agent;

That had Brown obtained patents for certain details to which he claimed the right, there would have remained open to the complainant the opportunity to obtain a patent based on 'the broad idea' of combining overhead carriers with hook attachments and a pig breaking machine as contemplated by the agreement of February 17, 1899;

That under the opinion of the Patent Commissioner it was impracticable to proceed through the channels of the patent office, because it would have necessitated conducting interference proceedings against the persons with whom he was obligated to procure and assign letters patent for an invention which Brown and the predecessor of defendant company had fraudulently obtained a patent for;

That therefore he refrained at that time from contesting with Brown or said predecessor Company the fraudulent method that had been resorted to in order to prevent the complainant from obtaining the royalties set out in the agreement of February 17, 1899;

That complainant was advised that by the fraudulent obtaining through its officer Brown by the predecessor of the defendant company of a patent covering the complainant's invention the purpose of the agreement was effected and the complainant became entitled to the benefits;

That the obtaining of the patent aforesaid by Brown was a breach of the trust and confidence reposed in him by the complainant, by which breach the defendant as assignee by virtue of succession to the Brown Hoisting & Conveying Machine Company should not be permitted to benefit;

That complainant had been advised that he could avail himself of his rights under the agreement of February 17, 1899, at any time during the life of the patent issued to Brown, and that he had 'elected to wait until the number of apparatus manufactured and sold by the defendant company would warrant' him 'in undertaking the expense of an equity proceeding, and that

reposing every trust and confidence in the courts of his State of residence, he was not in equity bound to jeopardize his rights in either of the States which created the defendant company or its predecessor or wherein its principal place of business was located;'

That complainant in 1911 wrote to defendant company concerning the number of apparatus that had been manufactured and afterward demanded an accounting for royalties due to him under the patent, and that defendant admitted having all the rights under the Brown patent and admitted the sale and manufacture of apparatus to the number of a hundred, but refused to account to the complainant in any way;

That Brown conspired with a patent attorney who was general counsel both for the defendant and the predecessor company, to take advantage of the knowledge gained by them in the negotiations which preceded the execution of the contract of February 17, 1899, and eliminate the complainant therefrom.''

The prayers of the bill are, first, that the defendant be decreed to specifically perform the agreement of February 17, 1899; second, that the defendant be decreed to account for and pay over to the complainant the income or profits or royalties derived by it and its predecessor, the Brown Hoisting & Conveying Machine Company, through a violation of the complainant's rights under the contract of February 17, 1899; third, that the complainant have any suitable further and other relief.

The demurrer to this bill, besides the general allegation that the bill is without equity, assigns four causes of demurrer: *First,* that under the allegations of the bill the complainant has an adequate remedy at law. *Second,* that the complainant has been guilty of laches. *Third,* that the Superior Court of Cook county is without jurisdiction to adjudicate the question of the right and title to letters patent issued by the United States Patent Office, such jurisdiction being vested in the courts of the United States. *Fourth,* that no facts evidencing fraud are alleged in said bill.

SHEPARD, MCCORMICK & THOMASON, for appellant; PERRY S. PATTERSON, of counsel.

GEORGE C. WING and WINSTON, PAYNE, STRAWN & SHAW, for appellee; WALTER H. JACOBS, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

We think that the chancellor in the Superior Court was right in sustaining the demurrer to the bill in this case. Whatever of merit there can be in the complainant's case must depend on the proposition maintained by him that the demurrer admits the truth of allegations in the bill to the effect that the invention for which Alexander E. Brown received leters patent on July 4, 1899, was the invention of the complainant and was "contemplated" and "expressed" in the contract of February 17, 1899, between the Brown Hoisting & Conveying Machine Company, the Iroquois Furnace Company and the complainant; that Brown applied for a patent covering said invention, asserting it to be his own, in order to defraud the complainant, and that this was admitted and acknowledged by Brown and the predecessor Company, to whose rights and obligations the defendant has succeeded. This acknowledgment is said by the bill to be shown by the correspondence which passed between the complainant and Brown and other officers of the Brown Hoisting & Conveying Machine Company and which appears in Exhibits 3 to 17 *"made a part of the bill."*

But the correspondence thus incorporated in the bill does not bear out the allegations of the bill. Making the purport of the correspondence itself, rather than the construction placed on it by the phrasing of the bill, the test of what is admitted by the defendant's demurrer, we cannot hold that the defendant stands here as admitting now or having admitted through its officers or its predecessor in the past that the patented

device of Brown was not his own invention or was the invention of Forster or was "contemplated" or "expressed" by the agreement of February 17, 1899. On the contrary, we find about two weeks after the agreement, the Brown Hoisting & Conveying Machine Company making a distinction between the "patents covering as broad a claim as possible, which will also include your method of moulding and casting" and the patents which it notifies Forster "our Mr. A. E. Brown also proposes to take out." "It is his intention" the Company says, "to take out such patents as were invented and perfected by him and he will at once apply for a patent covering the method of holding the pigs and sow with details pertaining to same." This is all said with reference to the apparatus at the works of the Iroquois Furnace Company. A few days later, March 10, 1899, the Company writes to Mr. Forster:

"The matter of taking out the patent is entirely optional with you, the agreement merely being that we shall pay the expenses in case you decide to apply for the patent. This agreement covers the broad claim as stated and had no reference to any details which you yourself might also claim to have invented. We understood that the broad combination referred to in the agreement was for the use of carriers generally in conjunction with breakers generally, you having asserted at the time that you yourself had conceived the broad idea of thus combining two separate pieces of machinery for use in cast houses for the purpose. How such a combination was to be worked out, the details of making it operative, we did not understand you made any claim to have invented. Without ourselves being sufficiently informed to be able to decide as between you and Mr. Brown in respect to the inventions involved in the machinery referred to, we made the agreement to depend, in the first instance, surely, upon the fact of your ability to obtain a United States patent for the broad invention as above defined.

Replying to the second paragraph of your letter, we have again to say that it is our understanding that the question is not what we wish you to do, but what

you may yourself decide to do in the premises, and further we think it lies with us alone to decide with respect to taking out any and all patents covering inventions by Mr. Brown in the connection. This part was left entirely optional with us, but after we returned home and after taking the matter up with Mr. Brown we concluded that the points mentioned in our letter of 6th instant ought to be covered and at once, and we therefore started on our application and duly notified you, which we considered proper.''

We think nothing could be clearer than the repudiation by this letter of any acknowledgment that the proposed application of Brown covered anything that Forster had invented or that was ''contemplated'' in the agreement of February 17th, or that in any sense Brown would be the ''agent'' of Forster in securing any expected patent.

It will be noted also that the construction placed on the agreement was thus early a matter of difference between the parties to it. This difference still continues, as appears from a comparison of the bill with this correspondence, for the bill alleges that by said agreement it was provided that the complainant ''should obtain United States letters patent on any invention by him which broadly covered the combination'' existing in certain pig handling and breaking machinery; and that the complainant ''was to obtain'' these letters patent within two years and ''was to assign'' them to the Company, on which assignment the Company was to pay the complainant certain sums; and that it was ''pursuant to the terms of said agreement'' that the complainant made his application for letters patent. But the claim of the defendant in the correspondence—a claim which is certainly borne out by the terms of the agreement, which is also by reference and annexation a part of the bill—is that the agreement was that if, and only if, Forster should within two years obtain letters patent on any invention by him which broadly covered the combination embraced in the pig handling and breaking machinery

as then constructed at the Iroquois Furnace Company plant, then the Conveying Company would pay Forster the expense of taking out the patent, Forster should on his part assign the letters patent to the Conveying Company, and the Conveying Company pay Forster a large royalty on each and every pig handling and breaking machine built by the Hoisting Company under such assigned patents.

This difference is very vital. The case made by the bill and the exhibits taken together, which is admitted by the demurrer, is different from that which would be made were the allegations of the bill purporting to give the effect of the contract and correspondence to be considered by themselves.

It is entirely consistent with the theory that the predecessor company of the defendant had constructed according to plans and instructions of both Forster and Brown, peculiarly arranged machinery, that it was without knowledge whether Brown, one of its officers, or Forster, was entitled and able to procure patents on the whole or any part of the same, or how far the claims of one would interfere with those of the other, that it wished to forestall the possibility of any outside interest being able to duplicate the machinery as it had been constructed, that Forster claimed the invention of the underlying and broad idea of a combination of certain devices in the matter, and that the Company was unable or unwilling to assert that such a combination was unpatentable or had been anticipated by Brown or otherwise, and equally unable and unwilling to assert that it was patentable or was not anticipated by Brown or others; that therefore it made an agreement which provided that if Forster should succeed in his contention he would deal with them and no one else. In this view, the contract was to tie Forster to a certain course in a certain contingency which might or might not arise, and in the happening of which the Company had no favorable interest. Nothing can be properly predicated as to the admission claimed on the

use of the words "your scheme" and "your problems" and "your plans" in letters written four years before in relation to a plant of the complainant's Company not fully installed until the end of those four years. In this view, the bill is properly demurrable, as it seems to us, for a general want of equity.

Its prayer is solely based on the contract, but nothing ever became due to the complainant under the contract because the basic and primary condition of it had never taken place. The contract was not that Forster *should* obtain letters patent, assign them and receive a royalty, but that *if* he did obtain them within two years that he should assign them in consideration of a royalty. He did not obtain them and consequently did not assign them and is entitled to no royalty. Nor can there be any such position successfully maintained in this view as that Brown was the agent of Forster in obtaining his patent, or that the contract is in effect already carried out in everything but the payment of royalties.

Of course under this view it is still possible to contend that the Examiner of the Patent Office was wrong in refusing a patent to Forster on his application, or that the Patent Office was wrong in granting a patent to Brown as the first inventor of the devices patented by him.

But these contentions pertain to a controversy between Forster and Brown, or Brown's assignees, which is not within the jurisdiction of other than Federal Courts. They arise under the patent-right laws of the United States. The complainant did not pursue the course marked out by the law for him to test the accuracy of the Examiner's report on his application, or the decision of the Patent Office on Brown's application.

It may be noted that the bill with its exhibits taken together does not bear out the implication of the body of the bill separately, that the claims allowed by the Patent Office in the Brown application were clearly

substantially identical with those disallowed in the Forster application; nor does the Examiner's report on the Forster application place the rejection altogether on anticipation by Brown.

Of the seventeen claims of Forster nine only are said to have been anticipated in the Brown patent, and of these nine six were rejected for reasons additional to their being anticipated. The three remaining ones were not for "combinations" but "methods."

The contract made the obligations of the Hoisting Company dependent on the obtaining by Forster of a patent broadly covering "a combination."

The claims of "combinations" in his application were declared by the Examiner not to be for combinations, but to show that the applicant was endeavoring to patent separate inventions on a single application, which could not legally be done.

If Forster disputed the decision of the Examiner on his application he could have a rehearing and if the rejection was repeated could appeal through two tribunals in the Patent Office to a final adjudication by Federal Courts. If he disputed the validity of Brown's patent on the ground that he and not Brown was the inventor of the combinations therein described which the Examiner reported anticipated his claims, he had a similar recourse to higher authority in the Patent Office and, in the case of adverse decisions there, to the courts.

He took no such action, but remained entirely inactive in the matter for about twelve years, when, in apparent preparation for a bill which he did not file until after twelve years had passed since Brown's patent had issued and his own application had been denied, he asked information from the defendant Company as to the amount of machinery it had manufactured under the Brown patent.

Before the amended bill was filed Brown had died. From the phrasing of the allegations of the amended bill we may suppose that he died even before the original bill was filed on August 16, 1911.

The absence of any intention on the part of the complainant to await the death of an important witness may be conceded—indeed, it is admitted by the demurrer; but this is immaterial. The relevant matter is that the result of the long waiting on the part of the complainant was that when the bill was brought the witness was dead. This fact itself is relevant only as making apparent the fact that the twelve years that had intervened since action could have been taken by the complainant in support of his contentions had brought about a material change in conditions to the disadvantage of the defendant Company in its defense. Laches was, we think, imputable to the complainant, and that laches would have been injurious to the position of the defendant even if the theory of the complainant's bill had been well founded.

The well recognized authority for the doctrine that a foreign corporation without license from the State cannot, because it is nonresident, avail itself of a statute of limitations which does not run while a defendant is nonresident, is not in point.

Laches may sometimes be used as a defense when the statute is unavailable. In *Gibbons v. Hoag*, 95 Ill. 45, and *Hubbard v. U. S. Mortgage Co.*, 14 Ill. App. 40, cited by the complainant, the distinction is clearly noted.

In this last case the Court says:

"Mere laches alone, short of the period fixed by the statute of limitations as a bar, will not preclude the assertion of an equitable right, where the adverse party is not lulled into security by the delay or prejudiced thereby. Nothing appears showing that the defendant was or could have been prejudiced by the delay; and laches, *therefore,* cannot be interposed as a defense."

In the case at bar the reverse of this condition, as we think, is true. When the bill was filed the defendant Company had constructed many costly machines and it

had been deprived of a most material factor in its possible defense.

Our conclusion is that the bill is without equity, that the real contentions of the complainant shown by the bill and exhibit are not within the jurisdiction of the Superior Court of Cook county, and that the complainant has been guilty of laches in bringing them forward.

The judgment of the Superior Court is affirmed.

*Affirmed.*