EDWIN S. MARSTON, Appellant, v. JOHN C. CATTERLIN.

Division Two, February 6, 1912.

ESTOPPEL IN PAIS: Abstracter Omitting Entry of Encumbrance: After-Acquired Title. Defendant was an abstracter and the agent for a loan company. He prepared an abstract to certain property and acted as the loan company's agent in making a loan upon the land, secured by a deed of trust. He omitted from the abstract a prior deed of trust. Defendant also at the same time lent his own money upon the land. The loan company assigned the loan and trust deed to another company, of which plaintiff is president. That company foreclosed the deed of trust and plaintiff holds the title as its trustee. Defendant purchased the land under a foreclosure sale under that prior deed of trust which he had omitted from the abstract. Plaintiff brought this suit to set aside the trustee's sale and the deed to defendant, or to allow a redemption from the sale. *Held,* that the defendant is estopped from asserting title against the plaintiff. The property should be adjudged to plaintiff, defendant to have a lien upon it for the amount paid by him for the title. However, the defendant must account for the rents and profits, after deducting for all legitimate expenditures by him about the property.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,* Judge.

REVERSED AND REMANDED (*with directions*).

*Bowersock & Hall* and *Thomas J. Smith* for appellant.

(1) An abstracter having omitted an instrument from his abstract ought not to be allowed to set up a claim under such instrument against one who was misled by his omission. Pomeroy, Equity Jurisprudence (2 Ed.), secs. 1047, 1053; Clark v. Bank, 57 Mo. App. 277; Bircher v. Sheet Metal Ornament Co., 77 Mo. App. 509; Deal v. Bank, 79 Mo. App. 262; Harrison v. Murphy, 106 Mo. App. 465; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558; Pettit v. Carpenter, 86 Mo. App. 452. (2) An agent cannot be allowed to enrich himself unjustly at the expense of his principal or the privies of his principal. Bingo v. Binns, 10 Pet. 269; Reese v. Wallace, 113 Ill. 589.

*Silvers & Silvers* for respondent.

(1) It is a familiar maxim that where the equities are equal, the law will prevail. In this case the New England Loan & Trust Company and defendant each simultaneously furnished money to Harris to pay his debts. Their equities are equal. In his own protection, however, without fraud and for value, Catterlin procured a prior lien. The law clearly gives him the right to this advantage. He was in duty bound to protect himself as against another to whom he owed no duty. 11 Ency. Law (2 Ed.), p. 188; Williams v. Charlier, 15 N. Y. App. 128; Phillips v. Crammond, 2 Wash. 441; St. Johnsbury v. Morrill, 55 Vt. 165; Newton v. McLean, 41 Barb. (N. Y.) 285; Rexford v. Rexford, 7 Lans. (N. Y.) 10; Russell v. Petree, 10 B. Mon. (Ky.) 184; Grimstone v. Carter, 24 Am. Dec. 230. There is no testimony that Marston or the Farmers' Loan & Trust Company was ever misled by the abstract. The abstract was kept by the New England Loan & Trust Company. If so neither Marston nor the Farmers' Loan & Trust Company ever saw it, and

therefore could not be misled by it. If, as a matter of fact, the Farmers' Loan & Trust Company or Marston had been misled by the abstract, it would have been an easy matter to produce the testimony of plaintiff or of some officer of said company to have shown this fact. This omission is fatal to plaintiff's contention. In the absence of any fraud on Catterlin's part, and in the absence of any statement or representation made by him tending to mislead the plaintiff or the Farmers' Loan & Trust Company, plaintiff and such trust company are bound to take cognizance of the public records in Bates county, Missouri. These records imparted notice to them as well as to Catterlin of the Kerns deed of trust. So that the Farmers' Loan & Trust Company bought the New England Loan & Trust Company's paper with constructive notice of the fact that it was inferior to the Kerns trust deed. If such company slept upon its rights and failed to take care of its interests and suffered the trustee to sell under the Kerns deed, it would hardly be fair to charge Catterlin up with this negligence and want of care, as the evidence fails to show that he was under any special obligations to such company. He who sleeps upon his rights must suffer the consequences. Pomeroy's Eq. Jur. (2 Ed.), sec. 418; Pomeroy v. Benton, 57 Mo. 531; Smith v. Washington, 88 Mo. 475; Miller v. Bernecker, 46 Mo. 194; Sommer v. Railroad, 4 Mo. App. 586; Reel v. Ewing, 71 Mo. 17.

ROY, C.—This suit was instituted in the circuit court of Bates county, December 3, 1903, to set aside a trustee's sale and deed, either absolutely, or, in the alternative, to allow a redemption from the sale. The cause was tried May 19, 1904, and on December 12, 1904, the issues were found for the defendant and judgment entered accordingly, and plaintiff has appealed.

On October 4, 1893, John B. Harris executed a deed of trust to J. R. Hales, trustee, to secure the payment of a note for $100 to Francis Kerns on 87 acres of land in Bates county.

In March, 1896, the defendant was in the business of making and furnishing abstracts of title to real estate in said county, being the owner of a set of abstract books, and was the agent of the New England Loan & Trust Company in the making of loans by that company on such real estate.

Harris applied to defendant in March, 1896, for a loan of $1950 on 213 acres of land, including the land in the Kerns deed of trust. Defendant furnished Harris an abstract of title to all said land and sent it to his said company and the loan was made. At the same time defendant loaned Harris on a deed of trust on the land $450 subject to the $1950 debt, and about a month later defendant furnished Harris $150 more on another deed of trust on the land. All said deeds of trust, including the Kerns deed of trust, were promptly placed on record when made.

On March 5, 1898, defendant had the $150 deed of trust foreclosed and became the purchaser and received the trustee's deed. On April 27, 1896, almost immediately after making said loan, the New England Loan & Trust Company assigned the $1950 deed of trust and note to the Farmers' Loan & Trust Company, trustee, of New York, of which company the plaintiff was and still is president. On Wednesday, March 28, 1900, the $1950 deed of trust was foreclosed, the plaintiff purchased the land at the sale on behalf of his company and took the deed to himself for convenience, and holds the title as trustee for his company.

There was a controversy in the pleadings and the evidence as to whether the Kerns deed of trust was left off the abstract as originally made and subsequently inserted. The defendant testified that he had

never seen the abstract from the time the loan was
closed until he saw it in possession of plaintiff's coun-
sel after the beginning of the litigation, and he was
not directly contradicted by any witness.

The abstract is before us.  It consists of ninety
sheets, consecutively numbered, each sheet being de-
voted to a separate instrument in the chain of title.
Each sheet consists of a printed form filled out by
the abstracter to show the substance of the instrument
abstracted.  All these forms are alike except as to the
printing; and in that respect there are three different
forms, which we will designate as forms A, B and C.

All the numbers of the abstract except 15, 16, 86,
87 and 88 are on form A.  Numbers 15, 86, 87 and 88
are on form B and are abstracts of deeds filed after
the date of the abstracter's first certificate, while num-
ber 16, which is the abstract of the Kerns deed of
trust, is on form C, and the only one on that form.
The entire written part of the abstract is in the hand-
writing of Ted Kendall, a clerk of defendant, except
number 88 and the indorsement "Given to    secure
$100" on number 16, and the consecutive numberings
of the sheets in red ink and a few other unimportant
particulars.  Defendant did all the writing on the ab-
stract which was not done by Kendall.

In March, 1896, when the abstract was made, Ken-
dall was seventeen years of age, and of limited expe-
rience.  He wrote a reasonably good hand, but of an
unformed and amateurish appearance.  He began
work for Catterlin in November, 1895, and left in
September, 1896.  Began again for defendant in Feb-
ruary, 1897, and continued until February or March,
1902.  Between September, 1896, and March, 1897, he
worked part of the time for Catterlin.  His duties
were to post the numerical index books of defendant
and make the abstracts, with such help as defendant
gave.  In making abstracts he took the deeds from the
numerical index as far as it went, then ran the rec-

ords down from the index in the recorder's office, for
from two to five years. He testified that sheet number
16 was written at a different time from the balance
of the abstract, saying, "Judging from the penman-
ship I would say that it had been written at a differ-
ent time from the other; I can't tell whether it was
two days or a week." He further testified that when-
ever Catterlin sent him to the recorder's office to ab-
stract any instrument, he complied with the directions,
and that he had never seen the abstract after he pre-
pared it until the trial.

After the foreclosure of the Kerns deed of trust,
at which Judge Silvers became the purchaser, he called
at defendant's abstract office to see him about getting
the money to pay the amount of his bid. He told de-
fendant about purchasing under the Kerns foreclos-
ure. In his testimony defendant says that he never
knew anything about the Kerns deed of trust until that
interview with Judge Silvers, and Judge Silvers tes-
tified that in that conversation the defendant spoke
of wanting to protect an interest for which he thought
he might be liable on the abstract which he had fur-
nished for the holder of a prior or subsequent mort-
gage to the New England Loan & Trust Company, the
defendant saying that he might have left that deed
of trust off the abstract. At the time of that inter-
view, the defendant called Kendall to bring him the
abstract book to see if the Kerns deed of trust was on
it. It was not. It was then entered on the book. Sil-
vers and defendant at that time made the deal by
which defendant purchased the land and Silvers de-
livered him the trustee's deed with the name of the
grantee blank.

Sheet number 16, the abstract of the Kerns deed
of trust, shows a mature splendid hand of a business
man of experience, markedly different from Kendall's
other writing on the abstract.

The abstracter's original certificate to the abstract is dated March 27, 1896, and his certificate to the extension is dated April 17, 1896, both on the same sheet at the end of the abstract.

Number 15 is the abstract of a release deed dated April 25, 1896, and filed May 1, 1896, after the date of the certificate of extension. Numbers 86 and 88 are abstracts of instruments filed on April 20 and April 27, 1896, respectively. The abstract is bound together by ordinary fasteners run through and clinched, so that it can be easily taken apart and bound together again.

It is conceded by the parties that Judge Hall, of Kansas City, the examiner for the New England Loan & Trust Company, in his report of his examination of the abstract made no note of the Kerns deed of trust.

During the examination of the defendant as a witness the following occurred:

"A.   I represented the New England Loan & Trust Company.

"Q.   Had you represented them before that?   A. Yes, sir.

"Q.   Have you represented them since?   A. Yes, sir.

"Q.   How long?   A.   Since they were in existence.

"Q.   Have you represented their successors?   A. I represented since then the New England Securities Company who are parties that partly ran the western office at Kansas City."

Mr. Bowersock testified that he represented the Farmers' Loan & Trust Company in the foreclosure of the deed of trust for $1950, and that at the time of the foreclosure or later, and not before, he obtained the abstract from the New England Loan & Trust Company.

I. We are driven to the conclusion that the Kerns deed of trust was not shown on the abstract at the time the loan was made, but was inserted therein by defendant after he purchased from Silvers and received the trustee's deed for the land.

Against such a conclusion is the testimony of defendant that he never saw the abstract from the closing of the loan until the beginning of this litigation, and no witness directly contradicted him.

On the other hand the evidence to the contrary is overwhelming. The abstract was in possession of the New England Loan & Trust Company at Kansas City, and was not delivered to the Farmers' Loan & Trust Company. The defendant continued to represent the former company and its successor. As such representative he, no doubt, had the opportunity to see the abstract, and thus had a chance to insert sheet number 16.

The defendant at the time of the loan was the abstracter who made the abstract and the agent who made the loan. This double obligation to see that no lien was omitted rested upon him. He numbered in red ink every sheet of the abstract. That means, in abstract parlance, that he examined those sheets in order to determine their relative place in the abstract, and then numbered them accordingly. If number 16 was then among the abstract sheets, he would have seen it. It was an unreleased encumbrance, and to negligently pass it by would have been a great moral dereliction. Yet he knew nothing of it until his interview with Judge Silvers long after.

Judge Hall, the company's examining attorney, failed to find it. When defendant's attention was called to it after the foreclosure sale under it, he spoke of his liability by reason of having left it off the abstract. He examined his own abstract books, from which the abstract had been made, and it was not shown there. He had it entered at once on his books.

Number 15 of the abstract being the next preceding number was evidently inserted there after the last certificate of the abstracter, because it was of a deed which was filed for record May 1, 1896, two weeks after the last certificate. It must have been substituted in place of some other sheet which was numbered 15. Number 16 could have been inserted just as easily. The difference in Kendall's handwriting on number 16 from that in the balance of the abstract is such as nothing but the passing of the writer from youth to manhood could have made.

The original abstract was all made on form A. The additions to the abstract made by way of correction or release in closing the loan were on form B, while number 16 alone was on form C, so that by every earmark of printing and handwriting it was made long after the remainder of the abstract.

There is nothing to show that the deed of trust was omitted from the abstract with any improper motive on the part of defendant, and his purchase under that mortgage was probably made in good faith on his part.

II. With the facts as above stated, is the defendant estopped from asserting title under the foreclosure of the Kerns deed of trust as against this plaintiff?

In the beginning of this discussion we are confronted with the case of Donaldson v. Hibner, 55 Mo. 492, in which it was held that the plaintiff, who as an attorney had procured a personal judgment on a constructive service against a defendant without personal service or appearance, and was having land sold under a general execution on that judgment, and who publicly proclaimed at the sale that such judgment and proceedings were regular and that a good title would pass by the sale, was not estopped, as against a purchaser at said sale who relied on such statement, from setting up the title thereafter acquired by him from

the execution defendant. This court held that estoppel
*in pais* operated only on rights existing at the time of
the acts constituting the estoppel, and that the title of
the execution defendant, having been acquired after
the sale, was not concluded by the estoppel.

That case is unique in one particular. No au-
thority on either side of the proposition is cited by
counsel, or by the court. A lawyer used his reputation
as such to induce the purchaser to rely on his repre-
sentation and purchase the land; then that same
lawyer used his skill as such in procuring the very
title which he had represented as passing at the execu-
tion sale, and thereby ousted the purchaser. In this
case an abstracter, as such, certified that no such en-
cumbrance existed; as an agent of the lender he under-
took, as far as he could, to guard against loss by reason
of prior encumbrances; then, after he had pocketed
his fees as such abstracter and his commission as such
agent, aided by the very knowledge which his connec-
tion with the business gave him, he bought up the
senior title under the omitted encumbrance, and seeks
thereby to destroy the rights now held under the deed
of trust to secure the loan which he had made as such
agent. If the law of estoppel does not apply in both
those cases, the only consolation one can feel is the
thought that "thus the law is written."

As the authorities were not cited in the former
case, we give the result of our investigation as fol-
lows:

Herman on Estoppel (2 Ed.), sec. 730, says:
"But the later decisions in England and America have
given a much broader scope to the doctrine of estop-
pels *in pais* than they originally possessed, and the
law has been established to be, that whenever an act
is done or a statement made by a party, which cannot
be contravened or contradicted without fraud on his
part and injury to others whose conduct has been
influenced by the act or admission, the character of

estoppel will attach to what would otherwise be mere matter of evidence, and it will become binding on a jury, even in opposition to proof of a contrary nature.''

This estoppel *in pais* is distinguished from estoppel by deed, and yet many cases of estoppel *in pais* are of a nature as conclusive as those which arise by reason of the recitals or covenants in a deed.

Section 2871, Revised Statutes 1909, provides:. ''Where a grantor by the terms of his deed, undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and shall not, at the time of such conveyance, have the legal title to the estate sought to be conveyed, but shall afterward acquire it, the legal estate subsequently acquired by him shall immediately pass to the grantee; and such conveyance shall be as effective as though such legal estate had been in the grantor at the time of the conveyance.''

In Evans v. Labaddie, 10 Mo. l. c. 430, this court said: ''Our statute is silent about any warranty; where the deed purports to convey a *fee simple absolute,* whether with or without warranty, the subsequently acquired legal title will pass.'' That may be called a statutory estoppel by deed. The reason for it is that the grantor having assumed the position of one owning the fee, and having thereby induced the other party to buy, should be estopped from claiming under an after-acquired title.

Now, there are cases of estoppel *in pais,* and this is one of them, where the attitude assumed by the person estopped is even stronger in favor of an estoppel than in case of one arising by deed.

On this subject Herman on Estoppel, sec. 956, says: ''There is a vast difference between standing by without taking measures to stop a sale and warning the purchaser, or even answering such questions as he may choose to put, and taking an active part in

the transaction, or inducing him to purchase by advice or persuasion. Good faith, generally an excuse in the former case, is insufficient in the latter, for in the latter case the owner is nearly, if not quite, in the position of a vendor, and cannot rely on the innocence of his assurances as a reason why they· should not be made good subsequently, and in one case the court held that inducing one to buy would estop the assertion of an after-acquired title, on the principle similar to that which vests by descent or purchase in a grantor who has previously conveyed with warranty.''

In the case of Beaupland v. McKeen, 28 Pa. St. 124, the court said: ''But let it be granted that they had no interest whatever in the tract, and that the title to it has been acquired since their agency ceased, the question there is whether a party who stands by and encourages two several purchases of the same land, receives a commission on the sale, surveys and adjusts lines, and performs all necessary acts for the protection of the apparent title, can afterward buy up and assert a better title to part of the land. Surely he cannot, until all distinction between fraud and fair dealing comes to be confounded. He is estopped from denying the right in whose existence he gave the purchaser reason to confide.''

In Bitting's Appeal, 17 Pa. St. 211, it was held ''that a person representing at a sheriff's sale that a certain judgment was paid is bound by such statement though he was not then the owner of the judgment, but afterwards purchased it, since an estoppel operates not only on present interests, but on those subsequently acquired.''

It was held in Briggs v. Langford, 54 Hun, 635, 7 N. Y. Supp. 358, ''that where one induces another to purchase lands in reliance on his assertion that they are free from encumbrances, he is estopped, as against the latter, to claim under a mortgage which existed

thereon at the time, and which he subsequently purchased.''

In Gibbons v. Hoag, 95 Ill. 45, the court said, l. c. 70: ''It is not to be tolerated that an attorney shall advise or encourage a client in investing in a bad title, and himself, afterwards, buy up the better title and assert it as against his former client. Such a practice would open a door to endless wrongs and villianies, and bring great and just reproach upon the profession.''

''The measure of the operation of an estoppel is the extent of the representation made by one party and acted on by the other. The estoppel is commensurate with the thing represented and operates to put the party entitled to its benefit in the same position as if the thing represented were true.'' [2 Pomeroy's Equity, sec. 813.]

This is not a suit for damages against the defendant for negligence as such agent in making the loan without providing for the prior deed of trust, nor is it a suit for damages by reason of his having left that deed of trust off the abstract. Honest and capable men may and do make mistakes as lawyers, as agents and as abstracters for which they may not be called to account. But it is a far different thing, when, in addition to such mistakes, they proceed to take advantage not only of their own wrong, but of their knowledge and skill and advantageous position in regard to the subject-matter, and buy up outstanding titles to destroy the rights of those who trusted in them. The defendant assumed to have the skill to protect the lender from all loss. He was employed and paid to furnish such protection and failed to do so. He then took up arms, so to speak, to annihilate those who trusted in him. Such a thing cannot be done a second time in this State ''until all distinction between fraud and fair dealing comes to be confounded.''

We are of the opinion that the property should be adjudged to the plaintiff, but that the defendant is en-. titled to a lien on the property for the reimbursement to him of the amount paid by him for the title acquired under the foreclosure of the Kerns deed of trust. However, the defendant must account for the rents and profits after deducting all taxes, repairs and insurance and other legitimate charges paid by him about said property.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. *Bond, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.